UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: THE MATTER OF BOPCO, L.P. AS ONER AND OPERATOR OF THE M/V MR. JOE, PRAYING EXONERATION FROM AND/OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NO. 11-3137<br><br>SECTION "C" (5) |

## ORDER AND REASONS

Before the Court is BOPCO, L.P.'s Motion for New Trial and/or Alternatively Remittitur and to Reconsider. Rec. Doc. 135. Frickey opposes. Rec. Doc. 139. Having considered the record, the law, and the parties' submissions, the Court DENIES the motion for the reasons that follow.

## I. Background

This matter arises out of a collision between a vessel owned and piloted by Frickey and one owned by BOPCO. Rec. Doc. 92. A jury trial was held from July 22, 2013 to July 24, 2013, at the close of which the jury returned a verdict finding BOPCO negligent and awarding Frickey damages for medical expenses, loss of earning capacity, physical pain and suffering, and mental anguish and emotional distress totaling $830,071.78. Rec. Doc. 108. After the jury delivered its verdict, BOPCO re-urged a motion for mistrial, initially made during Frickey's closing argument, based on Frickey having raised the existence of radar evidence that the Court excluded. Tr. July 24, 2013 at 156, 183-84. At the end of the re-urging, BOPCO opined that the Court "probably want[ed] [it] to brief [the radar issue] **in motions for new trial within the deadlines anyway**." *Id.* at 184 (emphasis added). The Court responded "Sure. That's fine. My react--- well, if you want to brief it, you can. **But I'm going to deny the mistrial**. So maybe just save that for later or something. . . . ." *Id.* (emphasis added).

1

As BOPCO's limitation petition was still outstanding, the Court did not enter judgment on the jury's verdict. When BOPCO questioned the Court about this procedural wrinkle, BOPCO indicated "So the reality of life, Judge, is I won't file any post-trial motions until you enter a judgment on the limitation, then my post-trial--," to which the Court responded, "Exactly." *Id.* at 186-87.

After trial, the parties submitted post-trial briefing on limitation of liability per the Court's orders. Rec. Doc. 116-118, 122-124. However, before the Court ruled on that issue and entered a final judgment in the case, BOPCO submitted briefing on its unsuccessful motion for mistrial, purportedly "as directed by the Court." Rec. Doc. 119. In addition, BOPCO sought to supplement its motion with newly discovered evidence. *Id.* Finally, BOPCO sought to proffer its newly discovered evidence into the record. Rec. Doc. 128.

After denying BOPCO's petition for limitation of liability, Rec. Doc. 131, the Court denied BOPCO's request to supplement the record and rejected its third urging of mistrial on partially different grounds, while noting that BOPCO's mistrial memorandum "was not a motion." Rec. Doc. 132 at 1. The Court further admonished BOPCO for ignoring its orders and both parties for "abusing the record." *Id.*.

BOPCO now submits the motion at bar to again urge its original mistrial arguments, again urge its new evidence arguments, and "set the record straight" on its well-meaning interpretations of the Court's orders and the Federal Rules of Civil Procedure.

## II. Analysis

As an initial matter, the Court apologizes to counsel for BOPCO for accusing him of ignoring the Court's orders. The Court cannot know the precise state of mind that animated

counsel's conduct. Nevertheless, it should be clear, given portions of the transcript excerpted above, that the Court in no way "directed" BOPCO to supplement its unsuccessful motion for mistrial before final judgment was entered. The statements by the Court that BOPCO continues to cite were made in the context of a discussion regarding the mistrial motion, which the Court had ruled on with finality, versus a proposed motion for new trial, which had yet to be filed; the Court directed counsel toward briefing of the latter variety. Counsel seemed to acknowledge this much in his colloquy with the Court only moments later.

Further, while the Court was mistaken in stating that BOPCO, rather than Frickey, had moved unsuccessfully to reopen record evidence, *see* Rec. Doc. 132; Tr. July 24, 2013 at 187-88, BOPCO was nevertheless present for Frickey's unsuccessful attempt to reopen the record. Although BOPCO attempts to characterize its attempt to reopen the record as more innocent than Frickey's, Rec. Doc. 135-1 at 2, the Court is skeptical. The Court's express purpose in emphasizing that the record would remain closed pending resolution of the limitations issue was to prevent counsel from using the intervening period to their strategic advantage. Tr. July 24, 2013 at 187. Whereas Frickey was attempting to drag out the submission of evidence, BOPCO has tried to give itself multiple bites at the same new trial apple.

Newly Discovered Evidence

As in its post-trial memorandum, BOPCO argues that a new trial is warranted based on recently obtained St. Charles Parish Hospital records which illuminate a 2013 altercation and a 2004 car accident involving Frickey. Rec. Doc. 135-1 at 7. A motion for new trial based on newly discovered evidence should not be granted unless it appears that the evidence: (1) would probably have changed the outcome at trial; (2) could not have been discovered earlier with due diligence;

and (3) is not merely cumulative or impeaching. *Diaz v. Methodist Hosp.*, 46 F.3d 492, 495 (5th Cir. 1995).

In its previous order, the Court concluded that this standard was not met because BOPCO had not exercised due diligence to obtain these records. Rec. Doc. 132 at 2-3. BOPCO points out that the Court misconstrued a statement in its previous memorandum in reaching this conclusion. Rec. Doc. 135-1 at 3-4. While Frickey had volunteered the accident in his interrogatory responses and at his deposition, he specifically denied recollection of any hospitalization or lower back injury thereafter. Rec. Doc. 119-5 at 5; Rec. Doc. 119-6 at 3-6. Thus, BOPCO had no reason to investigate any hospitalization at St. Charles Hospital until it learned of Frickey's June 2013 altercation on the eve of trial. In light of the foregoing, the Court agrees that its statement that BOPCO should have subpoenaed these hospital records after Frickey's deposition was in error. Rec. Doc. 132 at 2.

However, the Court notes that BOPCO waited until one day after the jury's verdict to issue a subpoena for records to St. Charles Parish Hospital, despite learning that the plaintiff had received treatment there after his 2013 altercation on the first day of trial. Rec. Doc. 119-2. In the criminal context, the Fifth Circuit has stated, "[w]hen a defendant becomes aware of evidence early in a trial, it is incumbent upon the defendant to seek a continuance or demonstrate efforts to obtain the evidence before it will be considered newly discovered." *United States v. Wall*, 389 F.3d 457, 469 (5th Cir. 2004). The Court sees no reason for a different rule to apply in civil cases.

As it relates to the 2013 altercation, BOPCO had a duty to issue its subpoena during trial and advise the Court of its efforts. Instead, BOPCO, having weighed its options, made a strategic decision to bring in Brandon Breaux as a witness, ask for a jury charge about Frickey's discovery

violations, and to seek a mistrial, if all else failed. Tr. July 24, 2013 at 79-80. BOPCO cannot resurrect its right to investigate this matter after the jury returned an unfavorable verdict.

Regarding Frickey's 2004 injury, because BOPCO was expressly led to believe that there would be no corresponding hospital records, the Court will not rest its ruling on BOPCO's failure to request records. To do otherwise would be to reward Frickey's failure to disclose his 2004 visit.

Granting that BOPCO's failure to obtain the 2004 records was excusable, their probative value for issues, apart from Frickey's credibility, is slight at best. The records show that Frickey sought emergency treatment for acute, intermittent lower back pain and spasms, after having a car accident four months before. Rec. Doc. 119-3 at 39. Frickey was given some medication and an x-ray, and discharged after less than two hours, with additional prescribed medication but no follow-up appointments or treatment. *Id.* at 46-48. Frickey's records indicate that shortly after receiving medication in the ER he felt "much better" and "pain free." *Id.* at 46. There is no indication that Frickey sought treatment for back pain again until the incident in this case.

BOPCO argues that this evidence could be used to argue the injuries, for which Frickey underwent a lumbar fusion, were proximately caused by the 2004 car accident and not his collision with BOPCO's ship. Rec. Doc. 119 at 3. However, Frickey's return to normal activity and lack of follow-up treatment after the 2004 visit suggest that he made a full recovery in the seven years before the accident in this case. By contrast, after his collision with BOPCO's vessel, Frickey experienced pain for a period of two years following accident, while undergoing conservative treatments, before ultimately undergoing the lumbar fusion.

Dr. Thomas's letter, though reaching a different conclusion, is still insufficiently probative on the causation issue to warrant a new trial. It merely states, given the similarity in the location of

5

spasms and pain complaints in this case and in the 2004 visit that Frickey's condition was more likely "chronic," "long-standing," and/or "ongoing" than previously thought. Rec. Doc. 119-4 at 3. Insofar as Dr. Thomas is saying that plaintiff suffered a lasting, traumatic injury in the 2004 accident, this apparently conflicts with his testimony at trial that, based on his review of imaging, "Frickey's lumbar spine was essentially normal for a 35-year-old man." Tr. July 23, 2013 at 189. Dr. Cupic specifically ruled out the possibility that the symptoms in this case were the result of a "arthritic or degenerative process" based on his examination of x-rays. *Id.* at 23. Dr. Thomas's letter fails to explain how the records offered would undermine this or any other opinion offered by Dr. Cupic at trial. While BOPCO claims that it was denied the opportunity to cross-examine Frickey's experts by suppression of these records, Rec. Doc. 135-1 at 8, it has not shown through competent evidence how doing so would have benefitted their case.

Assuming Frickey's 2004 accident was the cause of a lasting condition, BOPCO can still be liable for negligence which resulted in an injurious change to that condition under the "eggshell skull" doctrine. *See Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 495 (5th Cir. 2002). Given the timing of Frickey's symptoms relative to the two accidents, a rational jury was not likely to conclude that Frickey failed to meet his burden to show causation.

Finally, the impeachment value of these records does not warrant a new trial. The information contained therein would have revealed Frickey's interrogatory response and his answers to certain deposition questions to be incorrect. While it is conceivable that this was a deliberate falsehood, it is also conceivable that Frickey was telling the truth at his deposition when he said he did not remember going to the hospital for two hours, seven years before the deposition took place. *See* Rec. Doc. 119-6 at 3-6. No doubt BOPCO would have argued its position

strenuously. However, even assuming BOPCO's success in this endeavor, evidence that merely impeaches need not warrant a new trial. *Diaz*, 46 F.3d at 495.

Frickey's account of the incident was corroborated by his co-pilot and his account of his injuries was corroborated by his fiancee and physicians. Tr. July 22, 2013 at 70-75, 88, 232; Tr. July 23 at 19-52. Frickey's injury testimony was supported by objective observations of muscle spasms. *Id.* at 22. In light of the foregoing, the Court cannot say that these records, to the extent they constitute newly discovered evidence, would probably have changed the outcome at trial.

Evidentiary Rulings

BOPCO argues that a new trial is required based on the exclusion of Brandon Breaux as a witness to the June 2013 altercation involving Frickey. Rec. Docs. 135-1 at 8, 119 at 8. This ground is without merit for the reasons explained at trial and reiterated in the Court's previous order. Tr. July 24, 2013 at 22; Rec. Doc. 132 at 3. Even if BOPCO's attempt to call Breaux at the last minute was not comparable to Frickey's attempt to call its radar expert at the last minute, Breaux's testimony was too prejudicial to allow.

As to Mr. Barrios's cross-examination, the Court notes that BOPCO did not claim that he had direct knowledge of the June 2013 incident when it sought to question him. Tr. July 22, 2013 at 88-91.The probative value of asking Barrios if his opinion of Frickey's mobility would change had he known that Frickey was in a bar fight, as BOPCO had chosen to phrase its hypothetical, was far outweighed by the prejudice to Frickey.

Finally, having reviewed counsel's cross-examination of Frickey, the Court confirms that it did not prevent BOPCO from posing relevant questions to Frickey regarding the June 2013 altercation. Tr. July 22, 2013 at 181-85; Tr. July 24, 2013 at 22. Again, it appears that BOPCO

would like the Court to take responsibility for its strategic decision to bank on Breaux's inadmissible testimony in response to Frickey's failure to honor his discovery obligations. No new trial is warranted on this basis.

Improper Closing Argument

BOPCO has argued that the Court erred in failing to grant a mistrial based on Frickey's reference in its closing argument to the Court's ruling preventing him from calling a radar expert, to an offer to stipulate to a certain amount of future medical expenses, to alleged attempts to inflame the jury against itself and its counsel, and to various misstatements of the record. Rec. Doc. 119 at 15-22. Although the Court previously rejected these arguments, *see* Rec. Doc. 132 at 4-5, it adds the following observations.

Notwithstanding Frickey's reference to a radar expert, the Court notes that it was likely more prejudicial to BOPCO on the radar issue that Mr. Dupont very obviously contradicted his deposition testimony when, on the last day of trial, he testified that radar would not have detected Frickey's boat on the day of the accident. Tr. July 24, 2013 at 85-86. Dupont offered no logical explanation for the change in his testimony. *See, e.g.*, *id.* at 86 ("I know what I said in my deposition. But, like I said before -- it's getting repetitious."). Before counsel for Frickey ventured into forbidden territory, he referred to this contradiction, to great effect. *Id.* at 155-56. Against this backdrop, the Court is doubtful that the jury resorted to the testimony of an uncalled witness in determining liability or damages.

Next, although the Court did not admonish the jury to ignore argument to which objections were sustained, the Court properly instructed the jury that counsels' argument was not evidence or instructions on law. Rec. Doc. 109 at 1.

Finally, BOPCO failed to contemporaneously object to the alleged attempts to inflame the jury and the misstatements of fact that they raised in their memorandum. This fact precludes any further review. *See Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619-20 (5th Cir.1988) (holding that parties waive any objection to improper statements in closing argument when they do not object contemporaneously to the statements).

Remittitur

BOPCO argues that the jury's $695,000 general damages award is excessive, particularly with respect to the $490,000 allotted for mental anguish and emotional distress, and therefore requests remittitur of the jury's award. Rec. Doc. 135-1 at 14.[1]

Before considering the merits of this argument, the Court reviews the evidence relevant to the jury's general damages award. Frickey was 36-years-old at the time of the trial and his surgery and was 34 when the accident in this case occurred. Tr. July 22, 2013 at 174-75. He underwent L4-L5 decompression and two-level, L4-L5/L5-S1 lumbar fusion. Tr. July 23, 2013 at 40-44. Frickey testified, in addition to his fiancee and co-pilot, that he suffered mentally and emotionally from having to refrain from certain recreational and professional activities after the accident. Tr. July 22, 2013 at 82-83, 86-87, 171-79, 231-33. The jury heard that Frickey sought treatment for depression at the direction of his orthopedist. Tr. July 23, 2013 at 110.

In terms of future damages, there was testimony that Frickey would continue to suffer certain limitations to his mobility and recreational and vocational activities for the rest of his life. *Id.* at 118-19. The jury also heard that Frickey could need additional surgery to repair the nerve at

---

[1] The jury apportioned fault 75/25 between BOPCO and Frickey such that Frickey's actual general damages recovery was only $521,250 or 75% of $695,000. Rec. Doc. 133.

9

his L3-L4 disk. *Id.* 107-08, 119.[2] The jury apparently credited this testimony, as it found past and future medical expenses $200,000 in excess of the amount requested for past medical expenses.

As Judge Barbier has explained, the Fifth Circuit has endorsed two competing methods for determining whether remittitur is warranted: the maximum recovery rule and the clearly excessive rule.

> Under the "maximum recovery rule," a court reviewing a jury verdict should remit damage awards that are found to be excessive to the maximum amount the jury could have awarded. *Salinas v. O'Neill*, 286 F.3d 827, 830 (5th Cir.2002). The maximum amount is determined by comparing the award under scrutiny to awards in other similar cases. A multiplier of 50% is then applied to arrive at the maximum recovery amount, and the jury award is remitted to that amount if necessary. *Id.*; *see also, Thomas v. Texas Dep't of Crim. Justice*, 297 F.3d 361, 369 n. 8 (5th Cir. 2002). Under the "clearly excessive" rule, a "damage award may be overturned only upon a clear showing of excessiveness or upon a showing that the jury was influenced by passion or prejudice." *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995). Applying this rule, courts have traditionally frowned upon comparing an award to awards in factually similar cases as a method for determining if an award is excessive. *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1356 (5th Cir. 1988) ("we do not determine excessiveness of damage awards by comparing verdicts in similar cases, but rather we review each case on its own facts."); *see also, Thomas*, 297 F.3d at 374 n. 5 (Dennis, J., concurring) (citing Fifth Circuit cases for this proposition). Rather, this inquiry emphasizes the uniqueness of each case, which must be determined upon its own facts, while recognizing that comparisons may serve as a point of reference. 297 F.3d at 374.

*Campbell v. England*, 2005 WL 1400465, at *2 (E.D. La. June 3, 2005) (Barbier, J.) (footnote omitted), *rev'd on other grounds*, 234 Fed. App'x 183 (5th Cir. 2007).

BOPCO argues that Frickey's general and psychological damages should be remitted under the maximum recovery approach and directs the Court to several Louisiana cases that it argues are "nearly identical" to this one. Rec. Doc. 135-1 at 13-16. The Court disagrees. In *Belle v. New Orleans Public Belt Railroad Commission*, 09-2757, 2010 WL 2010509 (E.D. La. May 17,

---

[2] Frickey was awarded separate damages for future medical expenses, but, as he testified at trial, going under the knife is an anxiety-inducing experience. Tr. July 22, 2013 at 174-75.

2010), the Court reduced the jury's award of $770,000 in general damages to $375,000 for an on the job accident that required a L5-S1 lumbar fusion, and left plaintiff with some lasting back and leg pain and unable to work in his previous position as an engineer. *Id.* at *3. However, *Belle* contained no indication of the mental health symptoms that are present here. *See also Harrison v. Diamond Offshore Drilling*, 07-417, 2008 WL 708076 at *5 (E.D. La. March 6, 2008) (finding that the plaintiff had failed to prove that the accident caused him mental health problems); *see also, generally Stevens v. Omega Protein, Inc.*, 00-3326, 2005 WL 83248 (E.D. La. Jan. 13, 2005) (pointing to no mental health issues). Further, the remittitur granted in *Belle* was predicated on the fact that it was a one-level fusion. The Court specifically stated that cases involving "multiple surgeries or multi-level fusions" can justify awards over $250,000. *Belle*, 2010 WL 2010509 at *3. In this case, the plaintiff has had a two-level fusion and may require more surgery.

*Owens v. Abdon Calais Offshore* LLC, 10-3296, 2011 WL 3654239 (E.D. La. Aug. 19 2011) was a Jones Act case involving an employee whose back had "given out" on him during the course of his employment. The district court awarded $225,000 in general damages after a bench trial, finding specifically that the chance of additional surgery was too remote to warrant any recovery on that basis. *Id.* at 14; *see also Townsend v. Diamond Offshore*, 07-7651, 2009 WL 2447996 (E.D. La. Aug. 7, 2009) (awarding $200,000 in general damages based in part on finding that plaintiff would not require additional procedures). It also appears that the *Owen* plaintiff's back injury was not severe enough to warrant fusion. 2011 WL 3654239 at *14-15.

BOPCO's remittitur argument is no stronger when confined to the jury's award of damages for mental anguish and emotional distress. *See Gaunt v. Progressive Security Ins. Co.*, 11-1094 (La. App. 4 Cir. 6/8/12), 92 So. 3d 1250, 1271 (depression and other mental health issues

11

were preexisting conditions); *Crawford v. Diamond B Construction, LLC*, 09-0226 (La. App. 1 Cir. 9/11/09), 2009 WL 3162061 at *9 (characterizing jury's award as "on the low end of acceptable awards"); *Matos v. Clarendon Nat. Ins. Co.*, 00-2814 (La. App. 1 Cir. 2/15/02), 808 So. 2d 841, 846 (no mental health referral). In *Logan v. Brink's, Inc.*, 09-0001 (La. App. 4 Cir. 7/1/09), 16 So. 3d 530, 539, although the plaintiff apparently suffered more acute pain than Frickey appears to have suffered, there was still no indication that Logan's accident or injuries had caused him depression. The Court will not disturb the jury's award in this case based on an award for a different kind of injury.

The Court's independent research also reveals no cases that capture all of the relevant themes present in Frickey's damages evidence. The Fifth Circuit has stated that a departure from prior awards is justified "if unique facts are presented that are not reflected within the controlling caselaw." *Learmonth v. Sears, Roebuck & Co.*, 631 F.3d 724, 739 (5th Cir. 2011) (internal quotation marks omitted). Because this case presents such facts, the Court finds that it does not implicate the maximum recovery rule and, as such, will refrain from substituting its own judgment about the facts of this case for that of the jury.

Accordingly,

IT IS ORDERED that BOPCO's Motion for New Trial and/or Alternatively Remittitur and to Reconsider is DENIED. Rec. Doc. 135.

New Orleans, Louisiana, this 22nd day of January, 2014

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**